1  JEFFREY A. TOPOR (SBN 195545)
   jtopor@snllp.com
2  CHRISTOPHER M. SPAIN (SBN 265465)
   cspain@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile: (415) 352-2625

6
   Attorneys for Defendant
7  AllianceOne Receivables
   Management, Inc.
8

UNITED STATES DISTRICT COURT

CENTAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TAM LE, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLIANCE ONE RECEIVEABLES,<br><br>    Defendant. | CASE NO.: 8:13-cv-00838-DOC-JPR<br><br>**DECLARATION OF ROY BUCHHOLZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  December 16, 2013<br>Time: 8:30 a.m.<br>Courtroom: 9D<br><br>The Honorable David O. Carter |

1. I am the Senior Vice-President of Administration and Operations Support at AllianceOne Incorporated, parent company to AllianceOne Receivables Management, Inc. ("AllianceOne"). I make this declaration in support of AllianceOne's motion for summary judgment. I have personal knowledge of the facts set forth below based upon my review of the documents maintained by AllianceOne, and could and would testify thereto if called upon to do so.

2. AllianceOne is a full service, broad spectrum provider of Accounts Receivable Management, Outsourcing and Call Center solutions. On October 8, 2012, pursuant to a written agreement and as part of the normal course of business between the parties, Citibank, N.A. ("Citibank") referred Plaintiff Tam Le's delinquent account to AllianceOne for collection. Based on this, AllianceOne reasonably believed that Mr. Le owed the debt to Citibank.

3. As part of the collection process, AllianceOne corresponds with and telephones debtors. To ensure that it has accurate addresses and telephone numbers for the debtors from whom it attempts to collect, AllianceOne engages in "skip tracing," a process designed to obtain or confirm location information. One source that AllianceOne uses in this process is Experian, a consumer credit reporting agency, which issues consumer credit reports.

4. On February 25, 2010, AllianceOne entered into a subscriber service agreement ("the Agreement") with Experian, certifying and warranting that it would request and use credit information received from Experian in compliance with all federal, state and local laws, rules, regulations and decisions. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

5. On August 11, 2010, AllianceOne separately certified to Experian that it would comply with all requirements of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"), and that it would use consumer credit information it obtained from Experian solely in connection with credit transactions or for other "permissible purposes," as defined by the FCRA. AllianceOne further certified and

warranted that it would request and use information received from Experian solely in connection with transactions involving the consumer as to whom such information was sought, and would not request or use such information for purposes prohibited by law. A true and correct copy of the August 11, 2010 Consumer Services Schedule is attached hereto as **Exhibit B**.

6. On October 8, 2012, AllianceOne ordered a copy of Plaintiff's consumer credit report from Experian. AllianceOne did so to confirm that it had the correct contact information for Plaintiff, which it needed to contact him regarding payment of the accounts, and as part of its analysis into Plaintiff's ability to repay the accounts.

7. After acquiring Plaintiff's credit report from Experian, AllianceOne attempted to contact Plaintiff by telephone, and on October 9, 2012, sent him correspondence informing him, among other things, that Citibank had referred his account to AllianceOne for collection.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of September, 2013 in _Enzan, MV_____.

By: _____
Roy Buchholz

# Exhibit A

# EXPERIAN
# STANDARD TERMS AND CONDITIONS

This Standard Terms and Conditions ("Agreement") is made on the Effective Date set forth below between Experian Information Solutions, Inc. and Experian Marketing Solutions, Inc. (collectively, "Experian") and the Client indicated below at the signature line ("Client"). All references herein to this Agreement, unless otherwise specified, shall include the schedules and exhibits to this Agreement.

1. **Agreement.** This Agreement contains the standard terms and conditions for Experian's provision of products and services (collectively, the "Services") to the Client. The terms of this Agreement shall be supplemented by individual schedules containing additional terms and conditions applicable to specific Services (each a "Schedule").

2. **Term.** The term of this Agreement shall begin upon the Effective Date set forth below and shall continue in effect until the termination or expiration of all Schedules issued pursuant to this Agreement.

3. **Client Orders.** Client shall provide Experian with such information as necessary to provide the Services, which shall include at Experian's request job specifications or criteria reasonably necessary to perform the Services ("Client Order"). The terms of this Agreement shall be superior to, and supersede, any conflicting or inconsistent terms contained in any Client Order or other Client provided documents. If Client changes or cancels a Client Order, or any portion thereof, after Experian has commenced work, Client agrees to pay Experian for its costs incurred for such work in process. If the Services are substantially completed at the time of such change or cancellation, Client agrees to pay Experian the full price for such Services.

4. **Fees and Payment.** Client will pay Experian for the Services in the amounts agreed upon and set forth in the applicable Schedule or other mutually agreed pricing document. Unless otherwise provided in an applicable pricing document, Experian shall have the right to revise or amend the pricing by providing thirty (30) days prior written notice to Client before such revision or amendment becomes effective. Experian's invoices will be deemed to be correct and acceptable to Client unless Client advises Experian of disputed items within ten (10) days of their receipt. Payments shall be made to Experian within thirty (30) days of invoice date. If Client fails to pay any invoice in accordance with the foregoing terms, Client shall also pay interest on the unpaid amount at the lesser of one and one-half percent (1.5%) per month or the maximum amount allowed by law. The prices and rates for the Services do not include either shipping costs or applicable federal, state, local, or foreign sales or use taxes, and Client will pay or reimburse Experian for such shipping costs and taxes.

5. **Confidential Treatment.**

a) Under no circumstances will Client resell or otherwise disclose to any other person, other than employees or agents whose duties reasonably relate to the lawful business purpose for which the Services were obtained, any of the Services or data that Experian delivers to Client.

(b) Both parties hereby acknowledge that the Services and/or data provided by either party to the other may include personal information pertaining to individual consumers, and requires that the parties treat such information responsibly and take reasonable steps to maintain appropriate confidentiality and to prevent unlawful dissemination or misuse by its employees, officers, agents or any other person with access to such information. Both parties agree to comply with all applicable federal, state, rules and regulations applicable to their respective provision or use of the Services or data provided under the Agreement, including, if applicable, the Gramm-Leach-Bliley Act. Experian agrees that it shall not use or disclose information provided by Client hereunder, except to update its own data or to log inquiries as required by law or for use in providing the Services or for billing and auditing purposes, or for internal research requested by the Client. Both parties will maintain appropriate internal, technical, security and physical safeguards and other reasonably appropriate measures to protect the security, confidentiality and integrity of information relating to consumers and such information will only be disclosed to those of their employees whose duties reasonably relate to the legitimate business purposes for which the information is requested or used in accordance with applicable law or the Agreement. These measures shall be designed to advance the security and confidentiality of information relating to consumers, to protect against any anticipated threats or hazards to the security or integrity of such information that could result in substantial harm or inconvenience to any consumer.

(c) The Services and data shall only be used as expressly authorized in this Agreement or in any Schedule.

(d) Except as may otherwise by agreed to by the parties in any applicable Schedule to this Agreement, both parties to this Agreement agree to protect the confidentiality of any Confidential Information provided by the other party. For purposes of this Agreement, "Confidential Information" shall included but is not limited, unless otherwise set forth in this Agreement or as set for in the applicable Schedule(s), to all oral, written or electronically delivered information, proprietary, technical, developmental, operating, financial, performance, cost, know-how, process and prospect information, mailing lists, data-product designs, video tapes, program code, software systems and processes, and all samples, models and prototypes containing or disclosing such information, documents, business plans, names, customer lists, e-mail addresses, customer information and data and other information designated by either party as confidential (herein after "Confidential Information"). The disclosure of such Confidential Information does not grant any express or implied rights or license to copy, use, disclose or alter or in any way appropriate said Confidential Information unless agreed to in writing by both parties.

(e) Notwithstanding the foregoing, neither party shall have any obligation of confidentiality with respect to information (1) which was rightfully in possession of or known to the receiving party without any obligation of confidentiality prior to receiving it from the disclosing party; (2) which is, or subsequently becomes, legally and publicly available without breach of this Agreement; (3) which is rightfully obtained by the receiving party from a source other than the disclosing party without any obligation of confidentiality; (4) which is independently developed by a party without use of the other party's confidential information; (5) is disclosed by the receiving party with the written permission of the disclosing party.

(f) If Confidential Information is required to be disclosed pursuant to a valid order issued by a court or government agency of competent jurisdiction, then the party so compelled to disclose the information provides (a) prior written notice to the other party of such obligation and (b) the other party is provided the opportunity to oppose such disclosure or seek a protective order, if reasonable under the circumstances. Under no circumstances shall subparagraph 5(e) apply to any reported data, inquiry data, credit reports or lists generated by Experian as part of the Services, except for this subparagraph 5(f) regarding protective orders, which shall be applicable regardless of the nature of the information. If such protective order or other remedy is not obtained, or the disclosing party waives compliance with the provisions of subparagraph 5(f), the receiving party shall furnish only that portion of the information which the receiving party is legally required to disclose and shall exercise its reasonable efforts to obtain reliable assurance that confidential treatment shall be accorded the information. Client shall at all times comply with the confidentiality obligations set forth in this section with respect to all such reported data, inquiry data, credit reports and/or lists.

(g) Upon receipt of Confidential Information, the receiving party shall:

(i) keep the disclosing party's confidential Information provided to the receiving party by the disclosing party in strict confidence;

(ii) protect it with at a minimum the same degree of care as the Receiving Party treats its own confidential information.;

(iii) not disclose, or permit to be disclosed without the prior written consent, unless otherwise permitted in the Agreement or applicable Schedule(s), of the disclosing party, the confidential information to anyone other than the receiving party's affiliates, directors, officers, or employees who have a legitimate need to know the Confidential Information for the purpose of conducting the work intended by the disclosing party.

(iv) not use and will not permit its directors, officers, employees, agents or consultants to use disclosing party's Confidential Information for any reason other than for the provision and use of the Services as set forth in the Agreement and/or its applicable Schedule(s); and

(v) not disclose the Confidential Information to any unaffiliated subcontractors, agents or consultants without the prior written consent of the disclosing party, unless otherwise permitted in accordance with the Agreement and/or its applicable Schedule(s).

(h) The receiving party shall require all directors, officers, affiliates and employees to whom Confidential Information is disclosed pursuant to Section 5(g) above to agree to be bound by the confidentiality obligations set forth in this Agreement and the receiving party shall require all agents, consultants and other persons to whom Confidential Information may be disclosed pursuant to Section 5(g) above to agree in writing to be bound by the confidentiality obligations as set forth in this Agreement.

(i) Each party agrees to promptly return to the other all confidential information of the other party (including copies thereof) in such party's possession, custody, or control upon the other party's request at any time or upon the expiration or earlier termination of this Agreement.

(j) Each party agrees that it could be extremely difficult to measure the amount of damages to the non-breaching party from a breach or a threatened breach of any covenant contained in the this Section 5 of this Agreement, and that money damages may be an inadequate remedy, and that in such event, in addition to any remedies the non-breaching party may have at law or in equity, the non-breaching party shall be entitled to seek temporary and permanent injunctive relief to restrain the breaching party (and its employees) from such breach or threatened breach of this Section 5 only.

(k) Each party will, within 24 hours and to the extent permitted by law or law enforcement authorities, notify the other of any actual security intrusion or violation that will or could affect the other's Confidential Information including, without limitation, customer data and financial data ("Security Intrusion"). "Security Intrusion" means any unauthorized action by a know or unknown person which has been successfully completed and should be reasonably be considered to be one of the following" penetration, disclosure of confidential customer, consumer or other sensitive information, misuse of system access, unauthorized access or intrusion (hacking), virus intrusion, scan of a party's systems or networks, or any other activity that could affect the party's systems or data, or the security, confidentiality or integrity of other party's information that has been received, stored, processed, or maintained by the other party. Notification shall include any complaint or report the party receives from a third party (such as one of the other party's customers) that will or could affect the other's Confidential Information. If a Security Intrusion occurs, the party shall immediately notify, for Experian, Experian Global Operations Center America at telephone number 800-553-4785 and for Client, Mr. Marc Palumbo, email Marc.Palumbo@teleperformance.com, phone number: (215) 354-5500 x5128. In such notification, the party will report on the nature of the incident, the estimated impact on the other and investigative action taken or planned. Incidents shall include, without limitation, violations of a federal or state law. To the extent permitted by law or law enforcement authorities, within 3 business days of the initial incident report, the party that has experienced the security intrusion will provide the other party with a written updated report that summarizes the results of the investigative action and corrective/remedial action taken. Upon completion of the investigation and to the extent permitted by law or the law enforcement authorities, the party that has experienced the security intrusion will provide the other party with a final written report that gives a full accounting of the extent of the security intrusion or violation, a description of the party's confidential information disclosed, destroyed, compromised or altered, specific corrective or remedial action taken, all supporting technical documentation (including application and system network logs) and the information security impact on that party. Except as may be required by law or law enforcement authorities, the party that has experienced the security intrusion will not notify any of the other party's customer or potential customers of unauthorized access to the other party's confidential information housed by the party that has experienced the security intrusion without the other party's express consent or upon that party's specific instruction.

(l) As part of its respective information security program, each party shall maintain a document disposal policy which requires routine destruction of all materials that are not required to be retained by this Agreement or by applicable law. Each party shall properly dispose of the "Consumer Information" as defined in the Interagency Guidelines Establishing Standards for Information Security (as revised, 12/28/2004), 12 CFR Parts 30 (Appendix B)), whether such information is in paper, electronic or other form. Each party shall dispose of the other party's information by either shredding or otherwise rendering is unusable and unreadable. However, if a party determines that the destruction of the other party's information is not feasible, that party shall notify the other party in writing of that determination and the party may retain the other party's information provided that the party (a) continues to comply with the provisions of this Agreement for as long as it retains the other party information and (b) further limits its use and disclosures of the other party's information to those purposes that make its destruction infeasible. Notwithstanding the foregoing, however, any information/data contributed by Client to Experian under any applicable Schedule(s) the subject Agreement for incorporation into Experian's databases and any inquiry data provided to Experian by Client in order to permit Experian to provide the consumer credit services in accordance with the applicable Schedule/Agreement and which is required by law for Experian to retain for invoicing, billing and/or delivery of other Services are herein excluded from this requirement.

6. **Compliance with Laws.** Experian shall comply with all federal, state and local laws, rules, regulations and decisions applicable to Experian's provision of Experian data and the Services pursuant to this Agreement. Client shall comply with all federal, state and local laws, rules regulations and decisions applicable to Client's collection and provision to Experian of the Client data and Client's use of the Experian data and Services provided pursuant to this Agreement. Experian reserves the right to revise the terms, or conditions or pricing under this Agreement, any Schedule and/or the Services (including without limitation the right to withdraw or restrict affected data) to meet any requirement imposed by federal, state, or local law, rule or regulation, or to address matters concerning privacy and confidentiality, upon reasonable notice to Client.

7. **Data and Intellectual Property Ownership.** Client acknowledges that Experian has expended substantial time, effort and funds to create and deliver the Services and compile its various databases. All data in Experian's databases and any other intellectual property that are part of the Services are and will continue to be Experian's exclusive property. Nothing contained in this Agreement or in any Schedule shall be deemed to convey to Client or to any other party any ownership interest in or to intellectual property or data provided in connection with the Services.

8. **Termination for Cause.** If either party is in material breach of this Agreement or any Schedule, the non-breaching party may terminate the individual Schedule or this Agreement, as applicable,

provided such breach is not cured within thirty (30) days following written notice of such breach, unless such breach is the failure to pay for the Services under the terms of this Agreement, in which case Client shall have ten (10) days to cure such breach following notice. Notwithstanding the foregoing, this Agreement or any Schedule may be terminated by Experian immediately upon written notice to Client if in Experian's reasonable good faith judgement any Services and/or data provided to Client are being used or disclosed contrary to this Agreement or any Schedule. In the event that this Agreement or a Schedule is terminated as a result of a breach, the non-breaching party shall, in addition to its rights of termination, be entitled to pursue all other remedies against the breaching party. Termination of this Agreement or any Schedule shall not relieve Client of its obligation to pay for any Services performed or provided by Experian under this Agreement or any Schedule.

**9. Warranty and Disclaimers.** Experian warrants to Client that Experian will use commercially reasonable efforts to deliver the Services in a timely manner. Because the Services involve conveying information provided to Experian by other sources, Experian cannot and will not, for the fee charged for the Services, be an insurer or guarantor of the accuracy or reliability of the Services or the data contained in its various databases. THE WARRANTY IN THE FIRST SENTENCE OF THIS PARAGRAPH IS THE ONLY WARRANTY EXPERIAN HAS GIVEN CLIENT WITH RESPECT TO THE SERVICES. EXPERIAN MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES, ANY EXPERIAN DATA, OR ANY OTHER MATERIALS (TANGIBLE OR INTANGIBLE) SUPPLIED BY EXPERIAN HEREUNDER, AND EXPERIAN HEREBY EXPRESSLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT THERETO, INCLUDING WITHOUT LIMITATION, ANY WARRANTIES AS TO THE ACCURACY, COMPLETENESS OR CURRENTNESS OF ANY DATA OR ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

**10. Limitation of Liability.** Client acknowledges that Experian maintains several databases updated on a periodic basis, and that Experian does not undertake a separate investigation for each inquiry or request for Services made by Client. Client also acknowledges that the prices Experian charges for the Services are based upon Experian's expectation that the risk of any loss or injury that may be incurred by use of the Services will be borne by Client and not Experian. Client therefore agrees that it is responsible for determining that the Services are in accordance with Experian's obligations under this Agreement. If Client reasonably determines that the Services do not meet Experian's obligations under this Agreement, Client shall so notify Experian in writing within ten days after receipt of the Services in question. Client's failure to so notify Experian shall mean that Client accepts the Services as is. If Client so notifies Experian within ten days after receipt of the Services, then, unless Experian reasonably disputes Client's claim, Experian shall, at its option, either reperform the Services in question or issue Client a credit for the amount Client paid to Experian for the nonconforming Services. EXPERIAN'S REPERFORMANCE OF THE SERVICES OR THE REFUND OF ANY FEES CLIENT HAS PAID FOR SUCH SERVICES SHALL CONSTITUTE CLIENT'S SOLE REMEDY AND EXPERIAN'S MAXIMUM LIABILITY UNDER THIS AGREEMENT. IF NOTWITHSTANDING THE ABOVE, LIABILITY IS IMPOSED ON EXPERIAN, THEN CLIENT AGREES THAT EXPERIAN'S TOTAL LIABILITY FOR ANY OR ALL OF CLIENT'S LOSSES OR INJURIES FROM EXPERIAN'S ACTS OR OMISSIONS UNDER THIS AGREEMENT, REGARDLESS OF THE NATURE OF THE LEGAL OR EQUITABLE RIGHT CLAIMED TO HAVE BEEN VIOLATED, SHALL NOT EXCEED THE AMOUNT PAID BY CLIENT TO EXPERIAN UNDER THIS AGREEMENT FOR THE PARTICULAR SERVICES WHICH ARE THE SUBJECT OF THE ALLEGED BREACH DURING THE SIX MONTH PERIOD PRECEDING THE ALLEGED BREACH BY EXPERIAN. CLIENT COVENANTS THAT IT WILL NOT SUE EXPERIAN FOR ANY AMOUNT GREATER THAN SUCH AMOUNT.

NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES (INCLUDING BUT NOT LIMITED TO DAMAGES TO BUSINESS REPUTATION, LOST BUSINESS, OR LOST PROFITS), WHETHER FORESEEABLE OR NOT AND HOWEVER CAUSED, EVEN IF SUCH PARTY IS ADVISED OF THE POSSIBILITY THAT SUCH DAMAGES MIGHT ARISE.

**11. Waiver.** Either party may waive compliance by the other party with any covenants or conditions contained in this Agreement or any Schedule, but only by written instrument signed by the party waiving such compliance. No such waiver, however, shall be deemed to waive any other circumstance or any other covenant or condition not expressly named in the written waiver.

**12. Audit.** Experian will have the right to audit Client's and any of its agent's use of the Services to assure compliance with the terms of this Agreement. Client will be responsible for assuring full cooperation with Experian in connection with such audits and will provide Experian or obtain for Experian access to such properties, records and personnel as Experian may reasonably require for such purpose.

**13. Successors and Assigns.** This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective heirs, representatives, successors and permitted assignees. This Agreement may not be assigned, transferred, shared or divided in whole or in part by Client without Experian's prior written consent.

**14. Excusable Delays.** Neither party shall be liable for any delay or failure in its performance under this Agreement (except for the payment of money) if and to the extent which such delay or failure is caused by events beyond the reasonable control of the party including, without limitation, acts of God, public enemies, or terrorists, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes. If a party becomes aware that such an event is likely to delay or prevent punctual performance of its own obligations, the party will promptly notify the other party and use its best effort to avoid or remove such causes of nonperformance and to complete delayed job whenever such causes are removed.

**15. Choice of Law.** This Agreement is governed by and construed in accordance with the internal substantive laws of the State of California. Any dispute under this Agreement shall be brought in the federal or state courts in Orange County, California.

**16. Notices.** All notices, requests and other communications hereunder shall be in writing and shall be deemed delivered at the time of receipt if delivered by hand or communicated by electronic transmission, or, if mailed, three (3) days after mailing by first class mail with postage prepaid. Notices to Experian and Client shall be addressed to the addresses provided below each party's signature, or to such other address as either party shall designate in writing to the other from time to time.

**17. Complete Agreement.** This Agreement, as supplemented by any Schedules, sets forth the entire understanding of Client and Experian with respect to the subject matter hereof and supersedes all prior letters of intent, agreements, covenants, arrangements, communications, representations, or warranties, whether oral or written, by any officer employee, or representative of either party relating thereto.

**18. Amendments.** This Agreement may only be amended in writing signed by authorized representatives of both parties.

**19. Survival.** The provisions of Sections 4, 5, 6, 7, 9, 10, 12 and 16, in addition to any other provisions of this Agreement or any Schedule that would normally survive termination, shall survive termination of this Agreement for any reason.

**20. Authority to Sign.** Each party represents that (i) the person signing this Agreement or any Schedule has all right, power and authority to sign this Agreement or any Schedule on behalf of such party; and (ii) such party has full power and authority and all

necessary authorizations to comply with the terms of this Agreement and to perform such party's obligations under this Agreement.

IN WITNESS WHEREOF, Client and Experian sign and deliver this Agreement as of the Effective Date set forth below.

| Experian Information Solutions, Inc. | AllianceOne Receivables Management, Inc. |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Signature (Duly Authorized Representative Only) | Signature (Duly Authorized Representative Only) |
| Name: JEANNINE A. FORD | Name: Harry Neevenberg |
| Title: SENIOR CONTRACTS MANAGER | Title: CFO |
| Effective Date: FEB 25, 2010 | |

Address for Notice:

Experian Information Solutions, Inc.
475 Anton Boulevard
Costa Mesa, CA 92626
Attn: General Counsel

Physical Address for Notice: 3000 Ames Crossing Road Suite 750
Eagan, MN 55121
Attn: Tricia Schraiber

APPROVED FEB 19 2010
_[initials]_

Exhibit B

# EXPERIAN
## CONSUMER SERVICES SCHEDULE

This Consumer Services Schedule ("Schedule") supplements the Experian Standard Terms and Conditions, dated February 25, 2010 ("Agreement"), currently in place between Experian and Client.

1. **Application.** For the purposes of this Schedule, the term "Services" shall mean Experian's provision of services to Client which include the supply of consumer credit information, account review services, identification information, generic scoring services, and other data services from information stored in one of Experian's consumer databases. Experian will provide the Services to Client for the fees set forth in the attached Pricing Exhibit or other mutually agreed upon pricing document between the parties.

2. **Term.** Unless a term is specified in the applicable pricing document signed by both parties, this Schedule shall commence on the Schedule Effective Date and continue in force without any fixed date of termination, but Client or Experian may terminate this Schedule upon thirty (30) days prior written notice to the other party.

3. **FCRA Use.** Client will request and use the Services strictly in accordance with the federal Fair Credit Reporting Act, 15 U.S.C. 1681 et. seq., as amended (the "FCRA"). Without limiting the foregoing, Client certifies that Client will request and use the Services solely in connection with (i) a single credit transaction with a consumer, or, if applicable, for another "permissible purpose" as defined by the FCRA; and (ii) transactions involving the consumer as to whom such information is sought and will not request or use such Services for purposes prohibited by law. Client further certifies that it will comply with all requirements of the FCRA applicable to it. If Client has purchased a consumer report from Experian in connection with a consumer's application for credit, and the consumer makes a timely request of Client, Client may share the contents of that report with the consumer as long as it does so without charge and only after authenticating the consumer's identity.

4. **Data Use Restrictions.** Client agrees that it will not, either directly or indirectly, itself or through any agent or third party, without the prior written consent of Experian, request, compile, store, maintain, resell or use the Services (including any of the information contained in the Services) to build its own credit reporting database. Client shall be solely responsible for assuring the secure and confidential manner in which it stores, delivers and transmits Services to its authorized employee users. Client shall, at a minimum, comply with Experian's standard access security requirements.

5. **Inquiries.** When accessing Services, Client certifies it will use reasonable measures to identify consumers and will accurately provide Experian with complete identifying information about the consumer inquired upon in the form specified by Experian. Client will enter all requested Client and type code information when requesting Services. Experian may use Client's inquiry data for any purpose consistent with applicable federal, state and local laws, rules, and regulations. Client will be responsible for installing the necessary equipment, software and security codes to prevent unauthorized access to an Experian database.

6. **Data Contribution.** If Client contributes information on its credit experience with consumers, including updates thereof, (collectively "Client Records") to Experian, Client agrees to make Client Records available to Experian at mutually agreeable times and format, in accordance with Section 623 of the FCRA. Client shall provide Client Records which are accurate to the best of its knowledge and shall promptly update and correct all known inaccurate information. Client shall provide Experian with written notice (i) if any information is disputed by a consumer, (ii) if the consumer closes the account; and (iii) not later than 90 days after furnishing the information, of the date of the commencement of the delinquency of an account which is placed for collection. Client shall bear the expense of preparing and delivering Client's Records to Experian. Experian may incorporate, at Experian's expense, Client Records into its credit reporting system. Information, once incorporated and merged with other contributed data, will be Experian's exclusive property. Client shall retain ownership in information used to compile its Client Records. At Experian's request, Client will promptly reinvestigate and verify the accuracy of Client Records. Experian may use Client Records for any purpose consistent with applicable federal, state and local laws, rules, and regulations; provided, however, that Experian will use reasonable commercial efforts not to release a list that specifically identifies individuals as Client's customers.

7. **Third Party Processors.** In the event Client chooses to use a third party to perform certain data processing or model building services, the parties understand and acknowledge that the third party shall be acting on behalf of Client. Client will cause the third party to (i) handle, process, and possess all Experian provided data in accordance with this Agreement, and (ii) sign a Third Party Processor Undertaking form. Client shall provide Experian with the appropriate mailing instructions at least ten (10) days prior to the requested shipment date.

**ALL CLIENTS MUST COMPLETE THIS SECTION**

8. **Point of Sale Certification.** In compliance with Section 1785.14(a) of the California Civil Code, Client certifies to Experian that (i) Client ☐ IS ☒ IS NOT a retail seller, as defined in Section 1802.3 of the California Civil Code ("Retail Seller") and issues credit to consumers who appear in person on the basis of applications for credit submitted in person ("Point of Sale); (ii) if Client is a Retail Seller who issues Point of Sale credit, Client will instruct its employees and agents to inspect a photo identification of the consumer at the time an application is submitted in person; and (iii) it will only use the appropriate subscriber code number designated by Experian for accessing consumer reports for California Point of Sale credit transactions conducted by Retail Seller. Client shall notify Experian within 24 hours of any change in Client's status as a Retail Seller.

This Schedule, together with the applicable pricing document and the Agreement as amended herein constitutes the entire agreement between the parties with respect to the Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

Experian Information Solutions, Inc.

By: _____
Signature (Duly Authorized Representative Only)

Name: JEANNINE A. FORD
Print

Title: SENIOR CONTRACTS MANAGER

Schedule Effective Date: 8/11/2010

1.01.09
07.21.2010jaf AllianceOne

AllianceOne Receivable Management, Inc.
Print or Type Full Legal Name of Company

By: _____
Signature (Duly Authorized Representative Only)

Name: Harry Neerenberg
Print

Title: Sr. VP of Finance and CFO

Page 1 of 8

ConsumerServicesSchedule

APPROVED AUG 09 2010

## EXPERIAN
## CONSUMER SERVICES SCHEDULE

The fees set forth in this Addendum do not include taxes. Client shall be solely responsible for all federal, state and local taxes levied or assessed in connection with Experian's performance of the Services, other than income taxes assessed with respect to Experian's net income, for which income taxes Experian will be solely responsible.

During the Term of the Pricing Exhibit, if any federal, state or local law, ordinance or other regulatory, administrative or governmental as or measures are enacted which increase Experian's cost of providing the Services which are the subject of this Pricing Exhibit, Experian reserves the right, upon thirty (30) days prior written notice, to add a surcharge to the pricing set forth herein to cover the added cost of providing the Services in the affected geographic region.

| Experian Information Solutions, Inc. | | AllianceOne Receivable Management, Inc. Print or Type Full Legal Name of Company |
|---|---|---|
| Signature (Duly Authorized Representative Only) | By | Signature (Duly Authorized Representative Only) |
| JEANNINE A. FORD Print | Name | Harry Nearenberg Print |
| SENIOR CONTRACTS MANAGER | Title | Sr. VP of Finance and CFO |

APPROVED AUG 09 2010